SCOPIA MORTGAGE CORP. and Federal Deposit Insurance Corp., as Receiver of Security Federal Savings Bank, etc., Plaintiffs/Counterclaim Defendants,

v.

GREENTREE MORTGAGE COMPANY, L.P., Defendant/Counterclaimant,

No. CIV. A. 94–1197(JBS).

United States District Court, D. New Jersey.

Nov. 17, 1998.

Robert J. Gilson, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, Marie D. Nardino, Federal Deposit Insurance Corporation, New York Legal Services Office, New York City, for Plaintiffs/Counterclaim Defendants.

Glenn Harris, Levin & Hluchan, P.C., Voorhees, NJ, Leigh R. Isaacs, Isaacs & Evans, LLP, New York City, for Defendant/Counterclaimant.

## OPINION

SIMANDLE, District Judge.

Following extensive dispositive motion practice and motions in limine, plaintiffs/counterclaim defendants have filed a motion which seeks to amend the Joint Final Pretrial Order (filed 14 months ago) by enlarging the areas of expert opinion testimony by plaintiffs' expert, David Lawrence, who was deposed more than a year ago on his theories of liability. Lawrence's new proposed area of expert opinion testimony would extend to the issue of contractual damages upon the defendant's counterclaim. This motion calls upon the court to determine whether plaintiffs have demonstrated that this amendment is necessary to prevent manifest injustice under Rule 16(e), Fed.R.Civ.P.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves a commercial dispute between contracting parties concerning alleged mistakes and fraudulent representations in an agreement to purchase the assets of a company in the business of originating, servicing, and selling home mortgage loans on a volume basis. This action was filed on March 14, 1994. It grew out of the purchase of most of the assets of plaintiff Greentree

Mortgage Corporation (now known as Scopia Mortgage, but to which I will refer as "GMC" for the purposes of this Opinion) by defendant Greentree Mortgage Company, L.P. (known as "LP" in this Opinion) pursuant to a Restated Asset Purchase Agreement. The historical facts of this case are set out at length in this Court's opinions filed September 22, 1994; February 10, 1995; August 15, 1995; and June 25, 1998, and they do not need repeating here. However, I will lay out the relevant aspects of the procedural history.

After GMC filed the complaint in this case, defendant LP filed counterclaims arising from the Purchase Agreement, alleging that plaintiffs fraudulently misrepresented the nature of GMC's New Jersey State tax liability, calling it a deferred tax liability instead of taxes past due, which allegedly constituted a breach of the Purchase Agreement and caused defendant to pay an inflated purchase price for GMC's assets in the amount of $1,543,923. LP counterclaimed for fraud, negligent misrepresentation, misrepresentation, and breach of contract. After dismissal of plaintiffs' claims in this 1994 action, only LP's counterclaims remained.

In a Final Scheduling Order dated January 27, 1997, this Court ordered that all pretrial factual discovery must be concluded by April 30, 1997. (See Isaacs Cert. Ex. C.) On February 25, 1997, the Court directed that LP's expert report should be served by May 30, 1997, that GMC's expert's report should be served by June 30, 1997, and that depositions of all experts should be concluded by July 31, 1997. Magistrate Judge Joel Rosen had extended discovery numerous times and, in a May 15, 1997 Order responding to another extension request by GMC, Judge Rosen stated that "discovery is ... *closed.*" At the conclusion of discovery, plaintiffs submitted the expert report of David Lawrence dated June 24, 1997. (Gilson Cert. Ex. B, p. 1.) That report, responding to defendant LP's expert report submitted by Michael Dinkes on May 30, 1997,

principally addressed the question of whether GMC had properly deferred its New Jersey tax liability in 1990. LP's counsel notes that liability was the only issue addressed by Mr. Dinkes. The Lawrence report likewise did not address damages. Both experts were deposed in July of 1997.

Throughout July and August of 1997, the parties and Judge Rosen worked on the Joint Final Pre-trial Order, which was ultimately entered on September 4, 1997. The 75 page order listed in detail the facts and witnesses which the parties intended to call, including expert witnesses, as well as summaries of that testimony. The plaintiffs stated in that Order their position that LP had suffered no damages as a result of the breach of warranty (Order at p. 38), but stated that they intended to call no witnesses in regard to damages. (Order at p. 48.)

The parties next filed summary judgment cross-motions, upon which oral argument was heard on November 19, 1997, together with numerous motions in limine. On June 25, 1998, this Court denied summary judgment to the plaintiffs on defendant's counterclaims but granted partial summary judgment to defendant LP on its breach of contract claim. I found that GMC had represented the tax liability as "deferred," when in fact GMC's tax liability was overdue as a matter of law, and that this representation was both incorrect as a matter of law and material to the Purchase Agreement, thus constituting a breach of the Agreement as a matter of law; however, I found that a genuine issue of material fact existed as to the issue of damages because it was not apparent that this breach caused harm to LP, and thus denied summary judgment on that issue. Also in June 25, 1998, a separate Memorandum Opinion and Order addressed the cross-motions in limine.

Thereafter, on September 2, 1998, plaintiff GMC, now known as Scopia Mortgage, substituted new counsel, Robert J. Gilson, into this case.[1] Four months after this Court

---

1. Plaintiff GMC has had several substitutions of counsel in the course of this litigation. GMC's first attorney was Timothy J. O'Neill, Esquire of the firm of Jamieson, Moore, Peskin & Spicer, who was replaced in 1996 by Daniel Kinburn,

Esquire, of the firm of Dwyer, Kinburn, & Hall. Mr. Gilson and his firm succeeded Mr. Kinburn as of September 1998. Plaintiff FDIC has likewise been previously represented by Elizabeth Weiler, Esquire, and her firm, and also David L.

issued the June 25 partial summary judgment Order, a year after the filing of the Joint Final Pre-trial Order, and 1½ years after the close of discovery, plaintiffs, on October 22, 1998, moved to amend the Joint Final Pre-trial Order in a number of ways. During the pendency of this motion, on October 29, 1998, this Court also heard argument and granted LP's October 14, 1998 application pursuant to Rule 42, Fed.R.Civ.P., to bifurcate the trial.[2] The trial date for the first phase, on the claim of LP for damages arising from GMC's breach of contract, was set for November 30, 1998. LP's other counterclaims pertaining to liability and damages for fraud, misrepresentation and punitive damages, will be heard, if at all, in a second trial. Also, LP's claim for liability and quantum of contractual attorney's fees will be heard by motion, if necessary, if LP has succeeded upon its claim for contractual damages in the first phase of trial.[3]

During a telephone conference on November 9, 1998, I ruled from the bench on most of proposed amendments to the Joint Final pretrial order (*see* Order filed November 9, 1998) and reserved judgment on one proposed amendment in particular: the proposed new expert opinion by plaintiffs' expert David Lawrence. Mr. Lawrence has now supplemented his report in order to address the issue of damages as well. Plaintiffs seek leave to amend the joint final pretrial order in order to enlarge the scope of Mr. Lawrence's testimony to cover issues on which he has previously expressed no opinion, namely, opinions related to GMC's contention that LP suffered no damages because LP did not pay the overdue tax liability of GMC. For the following reasons, I will deny the plaintiffs' motion to amend the Joint Final Pretrial Order to include expert testimony at the November 30th trial, upon subjects that have

been in this case for years, upon which neither side anticipated expert testimony until GMC's present belated submission after all discovery and motion practice had been concluded.

## II. *DISCUSSION OF LAW*

### A. *Standard for the Motion*

A motion to amend the final pretrial order is governed by Rule 16(e), Fed.R.Civ.P., which states:

> After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

■ While it is within the court's discretion to allow amendments to the joint final pre-trial order, *see, e.g., Joy Mfg. Co. v. Sola. Basic Industries, Inc.,* 697 F.2d 104, 109 (3d Cir.1982), Rule 16(e) of the Federal Rules of Civil Procedure provides that such orders should not be modified except to avoid manifest injustice. In 1977, prior to the amendment to Rule 16(e) to include the "manifest injustice" standard for amendments to the final pretrial order, the Third Circuit noted that there are four main considerations behind this inquiry when it comes to adding new witnesses: (1) prejudice or surprise in fact to the nonmoving party; (2) ability of that party to cure the prejudice; (3) extent to which waiver of the rule would disrupt the orderly and efficient trial of the case; (4) bad faith or willfulness on the part of the movant. *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir.1977). The Third Circuit derived those elements from case law, which provides a host of other

---

Creskoff, Esquire, of the FDIC's Jersey City office, who was succeeded in 1996 by Ms. Nardino.

**2.** Defendant L.P.'s counsel had earlier proposed such bifurcation in his letter to the court dated October 14, 1998. An exchange of correspondence on the subject of bifurcation occurred prior to plaintiff's filing of the present motion, although Mr. Gilson had made an earlier informal request to amend the final pretrial order before the proposed supplemental expert report of Mr.

Lawrence existed. Lawrence's new report is dated October 20, 1998 and it was attached to Mr. Gilson's certification in support of this motion at Ex. B.

**3.** The bifurcation issue was decided in the oral opinion on October 29, 1998, although entry of the order was delayed until November 16, 1998 due to disagreements between counsel as to form.

considerations as well, including the ability of the movant to have discovered witnesses earlier, the validity of the excuse offered by the party, and the importance of the proffered testimony. *Id.* at 904 (internal citations omitted). If anything, the standard required by Rule 16(e) is more stringent than the old *Meyers* standard. More recent cases have focused on additional factors such as the importance of the proffered testimony, *see Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 720 (3d Cir.1997), and whether the decision to amend to include additional witness testimony is a matter of a new strategy or tactic. *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1287 (3d Cir. 1995). The Court should take all of these factors, those stated in *Meyers* prior to the amendment to Rule 16(e) and those emphasized in more recent years, to determine whether granting the amendment is necessary to prevent manifest injustice to the movant.

### B. *Parties' Positions*

Plaintiffs seek leave to amend the Joint Final Pretrial Order to include the proposed supplemental expert report of their expert witness David Lawrence, dated October 20, 1998, to focus now primarily upon damages, the issue related to the breach of contract counterclaim that still remains in this case. They argue that it would be manifestly unjust to prevent them from clarifying their position on damages in light of this Court's June 1998 decision granting partial summary judgment to the defendants/counterclaimants on their breach of contract counterclaim. (Pl. Br. at 6.) Plaintiffs admit that by ruling that plaintiffs were liable for breach of contract but that there existed a genuine issue of material fact as to damages arising from that liability, such that summary judgment on the issue of damages was not appropriate under Fed.R.Civ.P. 56, this Court did not raise an issue that was in any way new to the case, nor did the Court's opinion resurrect any issue that either party thought was absent from the case. Indeed, plaintiffs' new counsel, upon oral argument, admitted that the damages issue was always present but argued that both sides of the case had previously focused upon the liability aspect of the remaining counterclaims. Now that pretrial summary judgment has been entered against plaintiff GMC upon defendant LP's counterclaim for breach of contract, plaintiffs seek leave to amend to introduce expert opinion testimony on the eve of trial, arguing that this new testimony will not disrupt the trial, as it has already been prepared, but rather will make trial more orderly by focusing the issues better. Plaintiffs contend that there will be manifest injustice if they cannot amend, but that defendant LP will suffer no prejudice if such amendment is granted, despite the fact that LP has the burden of proof on the damages issue and has all along indicated that it does not see this as an area for expert testimony and therefore proffered no damages expert any time during the extensive preparations for trial.

Defendant LP vigorously opposes this motion, arguing that this application is both untimely and meritless, as well as improper as a matter of law, for it contains testimony about subjects for which expertise is not required, is vague and incomplete, and opines based on speculation. (Def.'s Br. at 23–27.) Moreover, LP asserts that the supplemental expert report is premised in part upon the expert's perception of ambiguous contractual language of dubious materiality of the characterization of GMC's past due tax liability, both of which are determinations foreclosed from re-examination at trial due to the entry of partial summary judgment on June 25, 1998.

### C. *Resolution and Holding*

■ Defendant has the better of the argument, for it is clear to me that no manifest injustice will arise from denial of plaintiff's motion. The question is not merely whether, had this information been included originally, it would have been helpful, for that is the threshold inquiry of all expert testimony under Rule 702, Fed. R. Ev. The issue instead is whether plaintiff's belated switch of expert subjects is necessary to avoid manifest injustice to the plaintiff if plaintiff must defend the contractual damages counterclaim without this new testimony. Plaintiff has demonstrated no such injustice.

It might be a different situation if this Court had, in the June 25, 1998 partial summary judgment Opinion, raised an issue that the parties themselves had never considered. However, that is not the case. My decisions upon the cross-motions may have narrowed the scope of the contractual issue to damages, but I did not identify an issue previously unconsidered by the parties. Indeed, the plaintiffs had themselves raised the argument that defendants could not show damages in their August 2, 1997 brief asking for summary judgment dismissing the counterclaims, at page 32. Plaintiffs' summary judgment brief was thus clearly in preparation in July, 1997, a few weeks after Mr. Lawrence finalized his June 24, 1997 expert report, and during the time when Lawrence was being deposed upon his opinions, which did not include damages issues despite plaintiff's own contentions that LP suffered no damage. At oral argument upon the cross-motions for summary judgment on November 19, 1997, attorneys for both sides directed much attention to the issue of whether LP would be able to prove it suffered damages from GMC's alleged breach regarding the past due tax liability. (See *e.g.,* Tr. 11/19/97 at 24–27, 30–31, 40–47, 50–53.) Likewise, this is not a case where nobody paid attention to Mr. Lawrence's original expert report, since defendant previously addressed it in a motion *in limine,* which sought to preclude Lawrence from testifying about certain footnotes in GMC's financial statements; this was among the many cross-motions *in limine* that were also decided in a Memorandum Opinion on June 25, 1998, at p. 6 (permitting such testimony). They can hardly argue now that the issue was a surprise when they themselves raised it long ago.

Likewise, when the JFPTO was prepared and entered on September 4, 1997, plaintiff had recognized that they would address LP's claim that it was entitled to money damages for breach of the warranty regarding the past due tax liability, yet the JFPTO is silent upon any suggestion that this would be an area for expert testimony by either party.

Moreover, not only was the issue known to the plaintiffs, but their expert, David Lawrence, could have addressed the damages issue just as well in his first report as he could now. He did not address it before, and to allow him to do so now would be to allow a new report with a new area of opinions, and not merely a supplement. Where no changed circumstance has occurred (such as discovery of new evidence), this is not normally permitted. *See Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998); *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 744–45 (Fed.Cir.1997); *Reliance Insurance Company v. Louisiana Land and Exploration Co.,* 110 F.3d 253, 257–58 (5th Cir. 1997). The documents on which Mr. Lawrence's proposed supplemental report relies, namely 44 Grant Thornton papers which are already listed as plaintiffs' exhibit 1, had been produced well prior to the end of discovery and were available to Mr. Lawrence for inclusion in the original report. No reasonable explanation has been given for plaintiffs' decisions not to address damages by expert testimony in 1997 or for the change of thinking today. Most likely, today's motion is the product of the recent change of plaintiffs' counsel, who now have their third team of attorneys in the four-year old case. Plaintiffs' new counsel now seek to try a different strategy. But as the Third Circuit said in *Fashauer,* 57 F.3d at 1287, purely tactical choices by the attorneys do not give rise to the need to allow amendments to final pretrial orders.

Even under the earlier test for amendment of the final pretrial orders laid out in *Meyers v. Pennypack Woods,* the present circumstances do not justify this amendment. The nonmoving party, defendant/counterclaimant LP, would be prejudiced by this amendment, for its own expert never addressed the issue of damages nor has it had any reason to suspect that this would become a subject of expert testimony. LP took the deposition of this expert witness already when it had every reasonable assurance of the scope and purposes of his proposed testimony. Even if defendant could attempt to cure the prejudice by going out and having a damages expert address that issue as well, to do this would disrupt the orderly and efficient trial of this case, as I would have to allow ample time for the defendant to retain its own

witness and to re-depose Mr. Lawrence in this case and furnish its new expert's report. At this stage, following years of discovery and motion practice, LP should not be required to jump through these belated hoops erected by GMC's change of tactics in order to prepare for the November 30th trial. I have considered whether to nonetheless move that trial date, finally set after over four years of wrangling and arguing before Magistrate Judge Rosen and the undersigned to get to this point. That I will not do. To suggest that every attempt to reopen discovery and to add subjects to the Joint Final Pretrial Order can be accommodated by again enlarging the pretrial period is to suggest that the end of the litigation process is of no practical consequence to the adversary and to the court's schedule. After four years, enough is enough.

 While I do not see bad faith by the plaintiffs, I do see this as a tactical decision, a change of strategy from earlier counsel, not something important enough to overpower the prejudice and delay which would come from this amendment. This is especially so in light of the principal additional factor on which the case law relies since *Meyers:* the importance of the new information. *See Meyers,* 559 F.2d at 905; *Konstantopoulos,* 112 F.3d at 720. In *Meyers,* the Third Circuit held that it was an abuse of discretion for the district court to deny the amendment to include two newly discovered witnesses because the witnesses were critical to that case; without those two witnesses, there was no case. The situation before me now is very different. Dr. Lawrence's proposed supplemental report presents no critical evidence. I have, by Order filed November 9, 1998, granted plaintiffs' motion for an amendment to the Joint Final Pretrial Order in large part to redesignate certain liability fact witnesses as damages witnesses, so the crucial factual information as to the damages issue will be part of plaintiffs' evidence at trial. Dr. Lawrence has no personal knowledge of the facts of this case. Moreover, as an expert, he cannot testify to the intent of the parties of a written agreement, *see International Paper Company v. Standard Industries,* 389 F.2d 99, 102 (10th Cir.1968); *CMI–Trading, Inc. v. Quantum Air, Inc.,* 98 F.3d 887, 890 (6th Cir.1996). His report would, to that extent, be based on speculation. Moreover, his proposed supplemental report merely performs a function of commenting upon the facts and circumstances, in much the same way that counsel are free to do in oral summations or written post-trial submissions. Not only, then, does this supplemental report appear less than important, but it may be largely irrelevant as well. Certainly, it is not crucial enough information to overcome the delay and prejudice this amendment would cause, as well as the unexplained reasons for failure to include this testimony when experts were identified and deposed in 1997.

As the Third Circuit said in *Koplove v. Ford Motor Co.,* 795 F.2d 15, 18 (3d Cir. 1986), Fed.R.Civ.P. 16 recognizes that scheduling orders are at the heart of case management; "[i]f they can be disregarded without a specific showing of good cause, their utility will be severely impaired." In *Koplove,* the plaintiff had in fact failed to identify a proposed expert upon a key issue of crashworthiness upon which it had the burden of proof within the time required by the scheduling orders. The Third Circuit upheld the district court's grant of summary judgment against the plaintiff despite the proffer that the plaintiff might have been able to furnish such evidence at a future date, because plaintiff failed to show good cause for violating the scheduling order deadline. The proffered testimony in the present case, in comparison to *Koplove,* is not crucial to the proponent's chance of success at trial, nor does the proponent, GMC, have the burden on this issue at trial, nor does the opponent, LP, intend to address such issues through its own expert. To allow this amendment would be to ignore completely Magistrate Judge Rosen's emphatic closing of discovery in May of 1997 after the plaintiffs in this case had repeatedly sought and gained discovery extensions. The time has long passed since the parties were ordered to submit expert witness reports—1½ years ago. This case has been in this Court since 1994. The docket sheet is already 21 pages long. Delay upon delay ensued, but at some point, it all must stop.

The trial must go on and justice must be served.

## III. *CONCLUSION*

For all the reasons I have stated in this Opinion, plaintiffs' motion for leave to amend the Joint Final Pretrial Order to include new opinion testimony by expert David Lawrence will be denied. the accompanying Order will be entered.

### *ORDER*

This matter having come before the court upon motion [Docket Item 170–1] by plaintiffs to amend the first pretrial order by enlarging the areas of proposed expert opinion testimony; and

Having considered the submissions in support and opposition, together with the arguments of counsel in a hearing on November 9, 1998; and

For reasons stated in the Opinion of today's date pursuant to Rule 16(e), Fed.R.Civ. P.;

IT IS this day of November, 1998 hereby

ORDERED that plaintiffs' motion to enlarge the areas of expert testimony shall be, and it hereby is DENIED.